(No. 22602.—

IN RE PETITION OF MYRTLE TANNER BLACKLIDGE,
Plaintiff in Error.

*Opinion filed February 15, 1935—Rehearing denied April 3, 1935.*

HERRICK and SHAW, JJ., dissenting.

W. G. ANDERSON, EUGENE P. MEEGAN, HERBERT M. WETZEL, JOHN L. HENRICK, and WILLIAM J. EARLEY, for plaintiff in error.

MURPHY O. TATE, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

Myrtle Tanner Blacklidge was arrested and imprisoned in the county jail under a *capias ad satisfaciendum* issued upon a judgment rendered by the superior court of Cook county in favor of Susanne Nottingham. Alleging that her imprisonment was illegal, Mrs. Blacklidge filed a petition in the county court of Cook county seeking her release by the delivery of her property. The cause was heard by the county court without a jury upon petitioner's motion to be discharged under the Insolvent Debtors act, the petition and the declaration. No evidence was adduced. The court found that malice was the gist of the action in which judgment was recovered against petitioner, denied the prayer of her petition and remanded her to the custody of the sheriff. Charging the violation of her constitutional rights, Mrs. Blacklidge prosecutes this writ of error.

The declaration in the principal case consisted of two counts, the first of which charged, in substance, that defendant willfully and maliciously alienated the affections of Norman E. Nottingham, plaintiff's husband. By the

second count plaintiff alleged that defendant "wrongfully and wickedly and maliciously debauched and carnally knew the said N. E. Nottingham, then and there still the husband of the plaintiff," thereby alienating and destroying his affections for his wife. The cause was submitted to a jury, which returned a general verdict finding Mrs. Blacklidge guilty and assessing plaintiff's damages at $7500.

It is first urged that the *capias ad satisfaciendum* was illegally issued because the cause of action on which it was based did not involve "fraud," "refusal to surrender one's estate," nor the element of "malice." Section 12 of article 2 of the constitution has abolished imprisonment for debt in this State except upon the refusal of the debtor to deliver his estate for the benefit of his creditors pursuant to statutory requirements, or in cases where there is a strong presumption of fraud. As early as 1853 this constitutional inhibition was held applicable only to actions upon contract. (*People* v. *Cotton,* 14 Ill. 414.) Since that early decision this court has consistently held that the provision does not extend to cases of tort but applies solely to debts arising out of contract between the parties, either express or implied. (*Lipman* v. *Goebel,* 357 Ill. 315; *Buck* v. *Alex,* 350 id. 167; *People* v. *Walker,* 286 id. 541; *Kitson* v. *Farwell,* 132 id. 327; *Kennedy* v. *People,* 122 id. 649; *Rich* v. *People,* 66 id. 513; *McKindley* v. *Rising,* 28 id. 337.) As neither section 12 of article 2 nor any other provision of the constitution prohibits imprisonment for debt in tort cases, it follows that the legislature has the power, if it so elects, to provide imprisonment for debt in tort actions. The legislature has exercised this power by providing in sections 4 and 5 of an act entitled, "An act in regard to judgments and decrees, and the manner of enforcing the same by execution, and to provide for the redemption of real estate sold under execution or decree," (Cahill's Stat. 1933, p. 1710; Smith's Stat. 1933, p. 1731;) that the person in whose favor any judgment may be ob-

tained may have execution thereon, in the usual form, against the lands or tenements, goods and chattels, of the person against whom the judgment is obtained, or against his body when the same is authorized by law, but that no execution shall issue against the body except when the judgment shall have been obtained for a tort committed by the defendant, or unless the defendant shall have been held to bail or shall refuse to deliver up his estate for the benefit of his creditors. It will thus be noted that the statute provides that the plaintiff may have execution against the body of the defendant when the same is authorized by law, and specifically excepts from the prohibition against such executions any judgments obtained for a tort committed by the defendant; in such cases an execution against the body is deemed authorized by law. (*People* v. *Walker*, 286 Ill. 541.) It is further provided by section 2 of the Insolvent Debtors act (Cahill's Stat. 1933, p. 1574; Smith's Stat. 1933, pp. 1598, 1599;) that any person arrested or imprisoned upon any process issued for the purpose of holding him to bail upon any indebtedness or in any civil action of which malice is not the gist may be released from such imprisonment by complying with the provisions of that statute.

It is argued, however, that the respective statutory provisions for the issuance of a *capias ad satisfaciendum* in tort cases involving neither fraud nor the refusal of a judgment debtor to surrender his estate in satisfaction of the judgment and for the release of judgment debtors wrongfully imprisoned, transcend section 12 of article 2. To sustain this contention reliance is placed principally upon the case of *In re Smith*, 16 Ill. 347, which construed section 15 of article 13 of the constitution of 1848, identical with the 12th section of article 2 of the constitution of 1870. The court merely held in the case cited, and also in the later case of *Strode* v. *Broadwell*, 36 Ill. 419, that the General Assembly can prescribe no means for imprison-

ment for debt except in conformity with the basic law. Obviously, these two cases do not hold that the legislature may not provide for the issuance of a *capias ad satisfaciendum* or prescribe the procedure for the discharge of a debtor seized and imprisoned in a case and under circumstances to which the constitutional provision against imprisonment for debt is inapplicable. The fourth and fifth sections of chapter 77 of the Revised Statutes provide for the issuance of a *capias ad satisfaciendum* under circumstances and for causes not prohibited by the constitution, and section 2 of the Insolvent Debtors act affords one seized and imprisoned an opportunity to have a court of competent jurisdiction ascertain whether his imprisonment is lawful. These statutory provisions do not violate section 12 of article 2.

The second contention of Mrs. Blacklidge is that no body execution can lawfully issue under sections 4 and 5 of chapter 77 unless it be for a tort involving "fraud" within the contemplation of section 12 of article 2 of the constitution, and that it does not include such torts as alienation of affections and criminal conversation. This contention cannot be sustained, because the constitutional provision did not contemplate, and has no application to, tort actions. She asserts, however, that upon the mere allegation in a declaration that defendant committed a trespass maliciously he will be precluded from obtaining his discharge under the provisions of the Insolvent Debtors act, and that the word "malice" must be construed to apply only to cases of fraud or where a debtor refuses to surrender his estate. In a tort action based on malice the writ of *capias ad satisfaciendum* may be obtained on a judgment against the defendant without an execution being issued to require him to deliver his property. (*Greener* v. *Brown,* 323 Ill. 221.) In such case, the person arrested and imprisoned is not entitled to be released upon the surrender of his property. (*Lipman* v. *Goebel, supra; In re*

*Mullin,* 118 Ill. 551.) The plain intent of section 2 of the Insolvent Debtors act is to afford the debtor arrested on a *capias* under chapter 77 an opportunity to show in the county court that malice was not the gist of the action. In this case Mrs. Blacklidge did not seek to prove that malice was not the gist of the original action and elected to submit her petition solely upon the declaration in that action.

It is also argued that sections 4 and 5 of chapter 77 are invalid because under their provisions a body execution can issue only against a natural person, and that these sections thereby discriminate between such persons and corporations. This same contention met an adverse decision in *Lipman* v. *Goebel, supra,* where we expressly held that section 5 of chapter 77 did not violate either the equal protection of the laws clause of the fourteenth amendment to the Federal constitution or section 12 of article 2 of the State constitution.

It is further claimed that the word "debt," employed in section 12 of article 2 of the constitution, includes debts on judgments rendered in tort cases. The mere fact that a judgment for money may be deemed a debt in the sense that the judgment debtor owes the judgment creditor does not render the judgment debt in a tort case one within the contemplation of section 12 of article 2. In particular, that provision is inapplicable to judgments recovered for malicious torts committed by the judgment debtor. *Lipman* v. *Goebel, supra; Buck* v. *Alex, supra; People* v. *Walker, supra.*

We come, finally, to the question whether malice is the gist of an action in a case involving criminal conversation. To sustain her position that it is not, Mrs. Blacklidge places reliance on *People* v. *Greer,* 43 Ill. 213. That case was an original proceeding in *mandamus* instituted in this court on the relation of Silas Livergood against the county judge of Macon county, who had denied the prayer of his petition for discharge from the custody of the sheriff of that

county. Livergood had been arrested under a writ of *capias ad satisfaciendum* issued out of the circuit court upon a judgment recovered against him, and in favor of Peter Kob, in an action on the case for an alleged seduction of Kob's daughter. In awarding a peremptory *mandamus* this court held that the wrong for which the judgment was rendered against the relator did not originate in malice; that malice was not the gist of the action in the principal case, and that the judgment debtor therefore enjoyed the right to be dealt with as an insolvent debtor. Even if it be conceded that malice is not the gist of an action for criminal conversation the concession cannot avail Mrs. Blacklidge, because the declaration in the cause in which she was found guilty consisted of two counts, only one of which was based on alleged criminal conversation. In the case cited it does not appear that the declaration contained allegations with respect to any tort other than seduction. Manifestly, the case of *People* v. *Greer,* *supra,* is not parallel with the present case.

The judgment in the principal case in the superior court was rendered in a tort action, and the plaintiff in that action, Mrs. Nottingham, was entitled to a *capias ad satisfaciendum* authorizing the imprisonment of the defendant until satisfaction of the judgment. Although the constitutional provision (section 12 of article 2) cannot avail Mrs. Blacklidge, she did have recourse to the Insolvent Debtors act. By the second section of that statute, any person imprisoned upon execution in any civil action, when malice is not the gist of the action, may be released from such imprisonment upon compliance with the provisions of the statute. It is conceded that she pursued the course prescribed by that act. The question remains, therefore, whether malice was the gist of the action in which the judgment was recovered against her.

"Malice," within the contemplation of the Insolvent Debtors act, does not necessarily mean hatred or ill-will but

applies to that class of wrongs which are inflicted with an evil intent, design or purpose. It carries the implication that the guilty party was actuated by improper and dishonest motives, with the intention to perpetrate an injury on another. (*Lipman* v. *Goebel, supra; Buck* v. *Alex, supra; Greener* v. *Brown, supra; Seney* v. *Knight,* 292 Ill. 206.) The "gist of the action" constitutes the essential ground or object of a suit, without which there is not a cause of action. (*Lipman* v. *Goebel, supra; Greener* v. *Brown, supra; Jernberg* v. *Mix,* 199 Ill. 254.) Malice may be made the gist of the action if properly pleaded. (*Lipman* v. *Goebel, supra; Seney* v. *Knight, supra.*) Whether malice is the gist of a particular action is to be determined from the charges made in the declaration. (*Lipman* v. *Goebel, supra; Greener* v. *Brown, supra.*) The declaration in the action instituted by Mrs. Nottingham consisted of two counts, both of which charged malice, and in one of which (the count charging alienation of affections) malice is the gist of the action. The verdict returned was a general verdict. In such cases, where the record does not show whether the general verdict was based on a count in which malice is the gist of the action, the presumption obtains that the verdict and judgment are based upon a cause of action of which malice is the gist. (*Buck* v. *Alex, supra; Jernberg* v. *Mix, supra.*) The judgment, however, is not conclusive that there was malice or that the party was actuated by improper motives, because the verdict may have been returned upon a count which did not include the element. (*Jernberg* v. *Mix, supra.*) It necessarily follows that in a proceeding under section 2 of the Insolvent Debtors act the petitioner is not estopped by the judgment from showing that the verdict was based upon a count where malice was not the gist of the action. (*Buck* v. *Alex, supra; Jernberg* v. *Mix, supra; Kitson* v. *Farwell, supra.*) In this case the general verdict of guilty was, in effect, a finding of guilty against Mrs. Blacklidge upon

each of the two counts. *Prima facie* the record discloses that malice was the gist of the action, and in the present proceeding she did not attempt to prove that the verdict was returned upon the criminal conversation count, of which malice was not the gist. To avail herself of the remedy afforded by the Insolvent Debtors act it was essential for her to bring herself within the provisions of the statute by establishing the fact that malice was not the gist of the action. This she has failed to do.

The judgment of the county court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHAW, dissenting:

I do not agree with the foregoing opinion. Section 12 of article 2 of the constitution of Illinois has abolished imprisonment for debt except upon refusal of a debtor to deliver his estate for the benefit of his creditors and except in cases where there is a strong presumption of fraud. It has been held, however, that this provision does not extend to cases of tort, but applies only to debts arising out of contract between the parties, either express or implied. (*Kitson* v. *Farwell,* 132 Ill. 327; *Kennedy* v. *People,* 122 id. 649.) Section 2 of the Insolvent Debtors act (Smith's Stat. 1933, par. 2, p. 1598,) provides that any person imprisoned on execution in any civil action when malice is not the gist of the action may be released from such imprisonment by complying with the provisions of the act. It is necessary, therefore, to determine whether malice was the gist of the action which resulted in the judgment on which this *capias* was issued.

Malice is of the gist of the action in a count charging alienation of affections and is not of the gist of the action on a count charging criminal conversation. The verdict in this case was general, and inasmuch as one good count will sustain a general verdict there is nothing in this record to conclusively establish either that malice was or was not the gist of the action which resulted in the plaintiff's judg-

ment. Under these circumstances it becomes necessary to resort to a presumption, either that malice was of the gist of the action, resulting in petitioner's continued imprisonment, or that malice was not necessarily of the gist of the action, resulting in her being set at liberty. In *Buck* v. *Alex,* 350 Ill. 167, in passing on this question this court used the following language: "If the declaration consists of several counts, one or more stating a cause of action the gist of which is malice and one or more a cause of action of which malice is not the gist, and the verdict is general, not specifying the count or counts on which it is based, the record does not show whether the verdict is based on a count stating malice as the gist of the action. The presumption is that the verdict and judgment are based upon a cause of action of which malice is the gist and that the defendant cannot be released from imprisonment under a *capias ad satisfaciendum* under the Insolvent Debtors act." No authorities are reviewed in that opinion, and no reason is assigned for indulging a presumption against, rather than for, the liberty of a citizen. In *People* v. *LaMothe,* 331 Ill. 351, in connection with a consideration of section 12 of article 2 of the constitution, it was stated that in the enforcement of this provision every doubt should be resolved in favor of the liberty of the citizen. The two views thus expressed are not in harmony, and I have therefore made some examination of the authorities to determine a course which in my opinion should be pursued when presumptions must be indulged.

The earliest case in point which has come to my attention is that of *Davis* v. *Robinson,* 10 Cal. 411, where the opinion was written by Mr. Justice Field, since then a justice of the Supreme Court of the United States. In that opinion he stated the rule to be as follows: "There is no doubt as to the correctness of the position that the execution must be warranted by the judgment. It rests upon and must follow the judgment. If it exceeds the judgment

it has no validity. To authorize, therefore, an arrest on execution the fraud must be stated in the judgment, for the writ issues, in the language of the statute, in the 'enforcement' of the 'judgment.' Nor do we entertain any doubt that the question of fraud must be submitted to the jury, except so far as may be necessary to authorize the arrest pending the action. To justify execution against the person, which may be followed by imprisonment, an issue must be framed and be determined like issues of fact raised upon the pleadings."

The case of *Davis* v. *Robinson, supra,* was commented upon, quoted from at great length, and followed, in the case of *Ledford* v. *Emmerson,* 143 N. C. 527, 55 S. E. 969, 10 L. R. A. (n. s.) 362. The judgment which resulted in the imprisonment in that case came about as follows: The plaintiff filed a complaint in which he alleged the defendant collected the proceeds of sale of certain options for the purchase of land which amounted to $10,000, and that the plaintiff's share thereof was $5000, from which $600 was to be deducted on settlement, leaving a balance due the plaintiff of $4400. The complaint further alleged that while he had consented that the options might be taken in the defendant's name (the defendant was his partner) upon the assurance that it would facilitate the sale of the land, it was done with the fraudulent intent of cheating and defrauding the plaintiff, and that the sale of the options was made with like purpose. The complaint further charged that a certain receipt for $250 made in connection with the original transaction was fraudulently obtained for the purpose of cheating the plaintiff out of his just and equitable share of the profits, the plaintiff claiming that he was an illiterate man and did not understand the transactions. The verdict of the jury was a general finding that the defendant was indebted to the plaintiff in the sum of $4225 "by reason of the matters alleged in the complaint." The court, after quoting from the California case above cited, said:

"So that when the jury found that he was indebted to the plaintiff 'by reason of the matters alleged in the complaint,' they referred, or at least must be presumed to have referred, of course, to those matters, only, which were necessary to constitute a cause of action for recovery of the debt, and they were the transactions between the parties prior to the payment of the money to and receipt of the money by the defendant for the plaintiff's use." It was held that the judgment can be sustained without reference to the matters of fraud, and that it would not be presumed that the jury passed upon the fraud, there having been no special finding to that effect, and that a personal execution should not have been issued. In the opinion the court cites a prior North Carolina case (*Preiss* v. *Cohen,* 117 N. C. 54, 23 S. E. 162,) and continues as follows: "There should be a separate and distinct issue submitted to the jury as to any fraud alleged unless the cause of action is of such a nature that the question of debt and fraud can be tried in one issue, so as to leave a clear and intelligible finding as to each of them. Such a case will rarely, if ever, be presented, but we do not at the present undertake to say that an issue in that form would not be proper. It is better practice, though, to have the fraud found as a fact under an issue by itself or separate from that as to the debt." The court further said: "Where the issue of fraud is raised by the pleadings the plaintiff must take the burden, and he must establish the fact of fraud before he can be entitled to an execution against the person of the defendant. We conclude this branch of the case with the language of Chief Justice Pearson in *Claflin* v. *Underwood,* 75 N. C. 486: 'We concur with his honor in the conclusion that the defendant could not lawfully be arrested and imprisoned under a writ of *capias ad satisfaciendum,* for the reason that the issue of fraud had not been tried. By the constitution no person can be imprisoned for debt except in cases of fraud. No case of fraud had been proved against the peti-

tioner.' We also refer to *Merritt v. Wilcox,* 52 Cal. 238, and *Payne v. Elliott,* 54 Cal. 339, 35 Am. Rep. 80, where the subject is discussed and the conclusion we have reached is fully vindicated."

A note to this case as published in Lawyer's Reports Annotated (n. s.) states that editorial search has failed to disclose any cases in point except the principal case and those cited therein. My own research has disclosed nothing later, except the statement of the general rule in Corpus Juris, (vol. 23, p. 917,) as follows: "In construing certain provisions as to executions against the person it has been held that in order that such an execution may issue there must be a submission to the jury of a distinct and separate issue as to the essential fact upon which the right to the execution is based, arising upon proper allegations in the complaint, an affirmative finding thereon, and a judgment entered in conformity therewith, from which the liability of the defendant to arrest will appear."

The case of *Buck v. Alex, supra,* is a descendant of the case of *Jernberg v. Mix,* 199 Ill. 254. In that case much is said tending to sustain the conclusion reached in *Buck v. Alex,* but it was all unnecessary to the decision of the case. The petitioner in the *Jernberg case* had been found guilty by a general verdict, but there was also a special finding, on a separately submitted interrogatory, that the defendant had the fraudulent intent to receive and convert to his own use deposits in the bank at the time the checks in evidence were deposited. This special finding quite clearly and satisfactorily supported the *capias,* and the discussion which was indulged in by the court was entirely unnecessary, and it is dictum. Even this dictum, if it had been necessary to a decision of the case, is unsound. It was said that the petitioner, in his application for discharge, was not estopped by the judgment to show that malice was not the gist of the action against him, but that he might have proved, if he could, that the verdict and judgment were

based upon a count of which malice was not the gist of the action. The opinion suggests no means by which this proof might be made and I am unable to conceive of any. It is fundamental that a judgment is conclusive of the issues settled by it, and I know of no rule of law or evidence which will permit its impeachment or explanation—its impairment, limitation or modification—by any extrinsic evidence, nor otherwise than by an inspection of the record itself. No one would contend that the jurors on the former trial might be permitted to testify as to what happened in the jury room or what motivated their finding, and to permit any such inquiry to be made would be subversive of all our conceptions as to the solemnity and finality of judgments.

Inasmuch as one good count will sustain a verdict, it is impossible to determine from the record before us whether the verdict in this case was upon one count or the other or upon both. If a plaintiff in a civil action wishes to resort to a *capias ad satisfaciendum* in the collection of his debt, the way is clear and the road is plain by which he may make such a record as will not require the indulgence of any presumptions. The making of this record is within his control, and he may rely entirely upon counts of which malice is the gist or require the point to be settled by special interrogatory. I feel that the more humane rule, as well as the weight of authority, is in accordance with our expression in *People* v. *LaMothe, supra,* that all presumptions should be indulged in favor of the liberty of a citizen, and that when the record is left in doubt we should not presume that the verdict was based upon a count of which malice was the gist. The conclusion at which I have arrived is inconsistent with the holding in *Buck* v. *Alex, supra,* and to the extent of that inconsistency that case should be expressly overruled.

Mr. JUSTICE HERRICK, also dissenting.