CLIFFORD LEROY WHEELER, Plaintiff-Appellee, *v.* HARLAN FOX, Defendant-Appellant.

(No. 12148;

Fourth District—February 21, 1974.

A. W. Schimmel, Sr., of Pittsfield, for appellant.

Lewis, Blickhan, Garrison & Tucker, of Mt. Sterling, for appellee.

Mr. JUSTICE KUNCE delivered the opinion of the court:

This is an appeal by the defendant Harlan Fox from a judgment entered on a jury verdict of $4500 for the plaintiff Clifford Leroy Wheeler, in an action for alienation of affections and from the trial court's denial of defendant's motions for a new trial and an arrest of judgment.

The plaintiff and his wife, Sandra Joan Wheeler, were married December 12, 1961. They separated briefly in February 1971 for a few days and permanently April 1, 1971, when Mrs. Wheeler left with their two children to live with her parents. On May 3, 1971, plaintiff filed this action alleging that the defendant Harlan Fox had sought the affection of his wife and wrongfully induced her with offers of money and advice to leave plaintiff. The complaint further alleged the marriage, and as consequence of the alienation, Mrs. Wheeler's affection for her husband had been destroyed and that plaintiff suffered great distress of mind, body and estate to the amount of $25,000 in damages. In January 1972, Mrs. Wheeler obtained a divorce from plaintiff on grounds of extreme and repeated mental cruelty. In the divorce action, plaintiff was ordered to pay $30 per week child support, and he owed $750 in attorney fees. Neither the attorney fees nor any child support had been paid by him prior to trial of the alienation of affections action. On August 30, 1972, Mrs. Wheeler testified that the divorce action grew out of defendant's cursing at her, threatening to kill her, constant physical threats, heavy drinking, and his having left her on numerous occasions. She stated that the entire ten-year marital period was one of constant fighting and differences and that her leaving was necessitated by the fact that she had no more affection for plaintiff.

Defendant's testimony was that he was a jobber for Illico Oil Company with an office, home, and warehouse in Meredosia, Illinois—a few miles from Versailles where plaintiff and his wife operated a gasoline station and restaurant. Defendant sold petroleum products to and

collected from plaintiff over a period July 1970 to April 1971. Defendant had earlier employed Mrs. Wheeler at plaintiff's request as an office helper and collector in November 1968, and continuing on a temporary and intermittent basis to the present time, the primary amount of employment time being in 1972. Mrs. Wheeler kept the books for the restaurant and filling station, the defendant helped her in this task, and they made collections together in defendant's truck. On several occasions they went together to the Wheeler restaurant for lunch, collections and deliveries. Several witnesses testified to seeing Mrs. Wheeler and defendant together at the restaurant, at residences of others in the area, skating together at a rink in Meredosia at family skating parties attended also by plaintiff, and in the office together.

Plaintiff testified that in the spring of 1970 he went to Mr. Fox's house in the afternoon while Mrs. Wheeler was employed there and that nobody was in the office, the doors of the house were locked and the shades drawn, however a few minutes later he proceeded to help defendant move a television set after he refused to have coffee with his wife and had said to her, "[I]s it me or him. It don't make too much difference." He further related an incident in the winter of 1971, when he hid in the garage section of the filling station with a shotgun and through a window watched defendant and his wife engage in an act of intercourse. He aimed the shotgun at them from the window, but withdrew without their knowledge. When she returned home, he did not mention the incident to his wife or to defendant; however, just before his wife left him, he told her he had caught her and said, "[A]s long as you stay here and take care of these kids you can run Fox or whoever you want to, I don't care. You don't even have to sleep with me."

Mrs. Wheeler denied her husband's accusations or knowledge of them until the divorce hearing. She stated she was presently pregnant and not married, but defendant is not the father. She stated defendant had never induced her to leave her husband. Defendant also denied having intercourse or socializing with Mrs. Wheeler or inducing her to leave her husband.

After the jury verdict, defendant moved for judgment notwithstanding the court's order, motion in arrest of judgment, or, in the alternative, motion for a new trial.

The legislature and courts alike have recognized the contorted and grave abuses inherent in the civil remedy sought by plaintiff and its use as an instrument for "\* \* \* unjust enrichment, due to the indefiniteness of the damages recoverable \* \* \*" (Ill. Rev. Stat., ch. 68, pars. 34—40). Not only have alienation of affection actions been limited

sharply by statute in Illinois, they also have been subjected to close and strict judicial scrutiny within very narrow limits both in pleading and proof.

■■ The prima facie elements necessary to sustain a cause of action and which must be pleaded and proved are: (a) love and affection of the spouse for the plaintiff; (b) actual damages; and (c) overt acts, conduct or enticement on the part of the defendant causing those affections to depart. *Farrier v. Farrier*, 46 Ill.App.2d 471, 197 N.E.2d 163.

As to the first essential element of a prima facie case, the record is devoid of any competent evidence of the existence of mutual love and affection between plaintiff and his wife. The only remote reference to such love and affection is in the complaint alleging that a valid marriage of ten year's duration had been in existence at the time of the alleged wrongful acts. Plaintiff argues that although the complaint may not allege as positively as it might have that love and affection existed between plaintiff and his wife, the inference nonetheless of love and affection is present. This contention was directly refuted in *Farrier* where the court held that the mere allegation of an existing marriage, even one lasting for a long period of time, does not raise an inference of love and affection. There must be proof of the actual existence thereof. Hence, the court in *Bassett v. Bassett*, 20 Ill.App. 543, pointed out that marriage of itself cannot be considered as conclusive proof of that mutual regard and love which should be entertained by husband and wife. In *Farrier*, the court referred to *Bassett* and refused to infer mutual love and affection from the mere allegation of a marriage of 16 year's duration. We again hold, as there, that it is necessary to prove such affection and then show that the defendant pirated it away, not that it just drifted or voluntarily floated away. Again, this record clearly reflects that there remained no love and affection on the part of either spouse to be pirated or otherwise taken away. Previous marital difficulties of a substantial nature—physical threats, drinking problems, prior separations, walkouts by the plaintiff, constant fighting and arguing were related by Mrs. Wheeler. Furthermore, plaintiff expressly admitted that it made no difference to him whether his wife chose him or the defendant; it being his primary concern that someone would take care of the children—not with any love or affection for his wife.

■■ General pleading rules are applicable in an alienation of affection suit. Plaintiff may not simply allege conclusions such as an allegation that as a direct and proximate cause of defendant's actions the plaintiff suffered actual monetary damages. This is clearly conclusionary. (*Kniznik v. Quick*, 130 Ill.App.2d 273, 264 N.E.2d 707.) Before a party may recover, he must allege and prove facts that support each element of the

cause of action. *Skolnick v. Nudelman,* 95 Ill.App.2d 293, 237 N.E.2d 804.

■■ The statute permits the recovery of actual damages only (Ill. Rev. Stat., ch. 68, par. 35), bars punitive, exemplary, vindictive or aggravated damages (par. 36), and prohibits consideration of various elements of damages including mental anguish suffered by plaintiff and any injury to plaintiff's feelings (par. 37). Plaintiff's allegation of mental illness due to loss of his wife which necessitated medical attention and loss of profits due to the loss of his wife are not compensable. The courts have gone even further by elaborating upon and limiting the damage requirement beyond that contemplated by the statute. Generally, attorney fees and ordinary expenses of litigation are not allowable to a successful party in absence of statute or stipulations authorizing the same. (*Kniznik.*) The court also stated in *Kniznik* that loss of consortium in alienation of affection actions must be definite and not stated in conclusionary terms and that expenditures for household maintenance has too remote a relation to the wrongful acts involved.

■■ Not only did plaintiff fail to allege actual damages, he wholly failed to prove any legally compensable actual damages. Business losses resulting from the mismanagement and neglect of the station appear to be due more to plaintiff's continual absences than to any actions on defendant's part. Plaintiff's poor health and his unemployment are too remotely related to the wrongful acts involved to be compensable. Loss of the spouse's services is compensable, but the only proof of this loss is that when he returned from the hospital he was cared for and his meals provided by others, but this was done after Mrs. Wheeler had left permanently and the services rendered were furnished by friends at no cost to plaintiff.

Since the jury had before it no evidence of actual damages as limited by statute and case law to return a verdict for the plaintiff, it must have considered improper elements or taken into account emotionally appealable factors such as defendant's poor financial position or mental anguish suffered by him.

■■ Finally, the third and last element of a prima facie case—that the defendant was the blamable party and had by acts, words or design wrongfully or willfully alienated the affections of plaintiff's wife from him—was in no way proved by the plaintiff. The plaintiff clearly proved defendant's access to defendant's wife; however, there is no proof in the record that defendant was blamable. It even appears that plaintiff asked defendant to employ his wife. Throughout the entire period of their sociability, the record never establishes the defendant as the pursuer. To the contrary, Mrs. Wheeler's conduct, activities and intentions both

before and after the separation from her husband, indicate her to be the pursuer rather than the pursued. As in *Farrier,* the conduct of the defendant and Mrs. Wheeler "can scarcely be characterized as a model of exemplary conduct" and "the family relationship needs whatever protection it can get in modern America", but before civil liability can attach defendant must clearly be blamable—an element this record clearly fails to establish. Plaintiff proved no overt acts in the nature of enticement or offers of money to leave defendant as he alleged in his complaint. The questionable act of sexual intercourse in and of itself as related by the plaintiff would not alone constitute proof that the defendant was blamable or had the necessary willful intent necessary to support the third element of a prima facie case. It is necessary to prove that defendant is blamable and had willful and wrongful intent before civil liability may be imposed. *Murphy v. Willumsen,* 224 Ill.App. 425.

After review of all the evidence in the record, considering the influences therein most favorable to the plaintiff, there appears a total failure to prove the necessary elements of the plaintiff's case. Accordingly, and for the reasons stated herein, the judgment of the circuit court of Brown County is reversed with directions to enter judgment for the defendant and against the plaintiff.

Reversed.

CRAVEN, P. J., and SIMKINS, J., concur.