No. 2--06--0630          Filed:  8-7-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RHONDA SCHROEDER, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--L--198 |
| | ) | |
| MELISSA R. WINYARD, | ) | Honorable |
| | ) | Hollis L. Webster, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Rhonda Schroeder, brought suit against defendant, Melissa R. Winyard, alleging that defendant had alienated the affections of plaintiff's husband, Gennady Shvartsshteyn (Gene), resulting in their divorce.  The trial court granted summary judgment for defendant on the basis that plaintiff's cause of action was discharged in defendant's bankruptcy.  We affirm.

I. BACKGROUND

The following facts are undisputed.  Plaintiff married Gene on May 31, 1997.  Defendant worked with Gene at Royal Courier and Air Domestic Connect (Royal Courier) from June 28, 1999, through June 19, 2000.  On July 5, 2001, defendant filed for chapter 7 bankruptcy protection.  The bankruptcy trustee discovered no assets.  On October 23, 2001, defendant was granted a discharge of her prior debts, and the bankruptcy case was closed on November 5, 2001.  Plaintiff filed a petition

for dissolution of marriage on October 27, 2003, and her marriage to Gene was dissolved on November 21, 2003.

Plaintiff filed her action against defendant on February 22, 2005, alleging as follows. There was mutual love and affection between plaintiff and Gene until the time of defendant's "interference." At some point during her employment with Royal Courier, defendant engaged in a course of conduct intended to alienate the affections of Gene from plaintiff. Specifically, defendant encouraged Gene to travel with her, buy her expensive and lavish gifts, and spend time away from plaintiff. Defendant pursued and seduced Gene "until she was finally able to alienate his affections from his wife and eventually caused him to have sexual intercourse with her and to destroy the marital relationship between Gene" and plaintiff. As a direct result of these actions and the destruction of the marital relationship, plaintiff divorced Gene, and he no longer provided financial support to her.

As part of discovery, plaintiff produced a letter written to her by defendant sometime after her employment with Royal Courier ended. As this letter is relevant to our subsequent analysis of defendant's intent, we quote from it extensively:

"So much pain and hurt has happened and to know I have contributed to that, literally kills me inside. I know the suffering I go through matters nothing to you, but if nothing else, I want you to know I never intentionally wanted any of this to happen. I never wanted to disrupt your marriage. If you can take a moment and remember the person you met before all of this. ***

I know this is much too late to admit, but so many times I wanted to leave. I wanted things to go back like they were before. I wanted us to tan on our lunch, get our nails painted, talk about our significant others, have girls' night out and just be us. I entered a

world that over whelmed [sic] me, and when I realized I couldn't handle the situation any longer, I didn't know what to do. Then Steve [defendant's ex-husband] started working with us and the situation increasingly became unbearable. I can honestly tell you that I pretended to be someone/thing I was truly not to make it through. The people closest to me saw the change, but I just didn't know how to get out. I know it's easy to say why didn't I just quit. I felt I couldn't because I didn't want to fail or let people down. Ironically in the end, I not only failed but I lost things so precious to me. *** I told Gene that maybe you fight so hard because you truly love him. He said he knows you love him. I then said for God's sake, try to win you back. I am nothing to either of you, and both of you have endured much diversity [sic] and still found a way to stay together.

*** I am telling you this because I do not want you to lose your marriage and past years with your husband. I can not change the past but only try to learn from mistakes and make it better in the future. If God would grant me one wish, it wouldn't be to have my credit, house or any materialistic things back. I would ask that one day, you and Steve will find it in your hearts to forgive and be able to let go of the hate and anger this has caused. From the bottom of my heart, I am so sorry for all of this. I am sorry if I hurt you."

Defendant moved for summary judgment on March 17, 2006, on the ground that any liability she had to plaintiff was discharged in her bankruptcy. The trial court granted the motion on May 24, 2006, and plaintiff timely appealed.

## II. ANALYSIS

Summary judgment is appropriate only where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmoving party,

show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Zekman v. Direct American Marketers, Inc., 182 Ill. 2d 359, 374 (1998). Summary judgment should be denied where material facts are disputed or where reasonable persons could draw divergent inferences from undisputed facts. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004). While the nonmoving party is not required to prove his case at the summary judgment stage, he must present a factual basis arguably entitling him to a judgment in his favor. Brown, Udell & Pomerantz, Ltd. v. Ryan, 369 Ill. App. 3d 821, 824 (2006). We review de novo a grant of summary judgment. People ex rel. Department of Public Health v. Wiley, 218 Ill. 2d 207, 220 (2006).

Whether a debt is dischargeable is a matter of federal law governed by the terms of the Bankruptcy Code (11 U.S.C. §101 et seq. (2000)). Grogan v. Garner, 498 U.S. 279, 284, 112 L. Ed. 2d 755, 763, 111 S. Ct. 654, 658 (1991). As we subsequently explain, however, we still have jurisdiction to determine dischargeability in this case. Under section 727(b) of the Bankruptcy Code (11 U.S.C. §727(b) (2000)), chapter 7 bankruptcy relief "discharges the debtor from all debts that arose before the date of the order for relief" (emphasis added), except as provided under section 523 (11 U.S.C. §523 (2000)). "Debt" is defined as "liability on a claim." 11 U.S.C. §101(12) (2000). The definition of "claim" includes the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5)(A) (2000). The central purpose of the Bankruptcy Code is to give a fresh start to the honest but unlucky debtor (Marrama v. Citizens Bank of Massachusetts, 549 U.S. __, __, 166 L. Ed. 2d 956, 961, 127 S. Ct. 1105, 1107 (2007)), so debts are presumed dischargeable (In re Morris, 223 F.3d 548, 552 (7th Cir. 2000)). The creditor has the

burden of establishing, by a preponderance of the evidence, that the claim is not dischargeable. Grogan, 498 U.S. at 287, 112 L. Ed. 2d at 765, 111 S. Ct. at 659. A court will construe the exceptions to discharge strictly against the creditor and liberally in the debtor's favor. Morris, 223 F.3d at 552.

Section 523(a) lists nondischargeable debts. A subcategory of these debts is debts related to intentional torts, namely, debts from false pretenses, a false representation, actual fraud, or use of a false financial statement (11 U.S.C. §523(a)(2) (2000)); debts for fraud or defalcation while acting as a fiduciary, embezzlement, or larceny (11 U.S.C. §523(a)(4) (2000)); or, relevant to this case, debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" (11 U.S.C. §523(a)(6) (2000)). Under section 523(c)(1), a debt allegedly falling under one of these three subsections that was timely listed by the debtor on his bankruptcy schedule is nevertheless discharged unless the creditor requests a hearing within 60 days after the first creditor's meeting and the bankruptcy court determines that the debt does in fact fall within one of the subsections. 11 U.S.C. §523(c)(1) (2000); Fed. R. Bankr. P. 4007(c). The bankruptcy court has exclusive jurisdiction to determine whether this type of scheduled debt is discharged. 11 U.S.C. §523(c)(1) (2000); In re Mendiola, 99 B.R. 864, 866 (Bankr. N.D. Ill. 1989); Kearns v. Industrial Comm'n, 312 Ill. App. 3d 257, 262 (2000). On the other hand, a debt under one of the aforementioned three subsections that was not listed or not timely listed on the debtor's bankruptcy schedule, and for which the creditor did not have notice or actual knowledge of the bankruptcy in time to request a hearing, falls under section 523(a)(3)(B) (11 U.S.C. §523(a)(3)(B) (2000)). It has no limitations period, and state and bankruptcy courts have concurrent jurisdiction to determine

dischargeability. Mendiola, 99 B.R. at 868 n.6; Kearns, 312 Ill. App. 3d at 262-63; see also Neal v. Oak Brook Management Corp., No. 2--06--0549, slip op. at 4 (2007).

The instant case falls under the latter category because defendant did not list her "debt" to plaintiff on her bankruptcy schedule (which is understandable given that plaintiff did not file suit until several years after defendant's bankruptcy case was closed), so our state courts have jurisdiction to determine whether plaintiff's suit was discharged in defendant's bankruptcy. Moreover, in a no-asset chapter 7 case like defendant's, scheduling the debt would not have affected dischargeability, because there is never a claim filing period in such cases. Mendiola, 99 B.R. at 867-68; Neal, slip op. at 5.

Plaintiff argues that defendant's liability for alienating Gene's affections was not discharged, because it fits within the exception of section 523(a)(6). The parties do not dispute that in the absence of section 523(a)(6)'s application, defendant's liability was discharged as a prepetition debt in her bankruptcy.[1] As stated, section 523(a)(6) exempts debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6) (2000). Thus, the creditor must prove that: (1) the debtor owes a debt resulting from an injury that he caused;

---

[1]In the absence of such a dispute, we do not analyze various approaches to determining whether a debt arose "prepetition" or "postpetition." See, e.g., In re Parker, 313 F.3d 1267, 1269-70 (10th Cir. 2002) (comparing "conduct theory," under which the date of the claim is determined by the date of conduct giving rise to the claim, to "accrual theory," under which the date of the claim is determined by the state law under which liability for the claim arose); see also In re Piper Aircraft Corp., 58 F.3d 1573, 1577 (11th Cir. 1995) (discussing "Piper test," which examines the parties' preconfirmation relationship).

(2) the debtor's actions were willful; and (3) the debtor's actions were malicious. 11 U.S.C. §523(a)(6) (2000); In re Rizzo, 337 B.R. 180, 188 (Bankr. N.D. Ill. 2006).

"The terms 'willful' and 'malicious' have caused no end of problems." Rizzo, 337 B.R. at 188. We start with the term "malicious," which the Seventh Circuit has stated " 'means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm.' " In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994), quoting Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986). As far as "willful," the United States Supreme Court has said, "The word 'willful' is defined in Black's Law Dictionary as 'voluntary' or 'intentional.' [Citation.] Consistently, legislative reports note that the word 'willful' in §523(a)(6) means 'deliberate or intentional.' " Kawaauhau v. Geiger, 523 U.S. 57, 61 n.3, 140 L. Ed. 2d 90, 95 n.3, 118 S. Ct. 974, 977 n.3 (1998). Additionally, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." (Emphasis in original.) Kawaauhau, 523 U.S. at 61, 140 L. Ed. 2d at 95, 118 S. Ct. at 977. Like intentional torts, as opposed to reckless or negligent torts, section 523(a)(6) requires that the actor intend the consequences of his act, not simply the act itself. Kawaauhau, 523 U.S. at 61-62, 140 L. Ed. 2d at 95-96, 118 S. Ct. at 977. Accordingly, section 523(a)(6) excludes injuries that were recklessly or negligently inflicted. See Kawaauhau, 523 U.S. at 61-62, 140 L. Ed. 2d at 95-96, 118 S. Ct. at 977.

The Supreme Court did not elaborate on what type of intent is required for the willful act, but several courts have found that the requirement is satisfied by showing either that the debtor had the subjective intent to injure the creditor or that the debtor subjectively believed that injury was substantially certain to result from his act. See In re Basel-Johnson, No. 05--B--36481, slip op. at

14 (Bankr. N.D. Ill. April 17, 2007) (cases cited therein). Whether a person acted willfully and maliciously is typically a question of fact reserved for the trier of fact. See In re Basel-Johnson, slip op. at 14. We leave these terms aside for the moment and turn our attention to the requirements for a claim of alienation of affections under Illinois law.

To prove a claim for alienation of affections, the plaintiff must show: (1) love and affection of the alienated spouse for the plaintiff; (2) actual damages; and (3) overt acts, conduct, or enticement by the defendant causing those affections to depart. Orbeta v. Gomez, 315 Ill. App. 3d 687, 690 (2000). In conjunction with the third element, courts have required a showing of "willful intent." Wheeler v. Fox, 16 Ill. App. 3d 1089, 1093-94 (1974). "It is necessary to prove that defendant is blamable and had willful and wrongful intent before civil liability may be imposed." Wheeler, 16 Ill. App. 3d at 1094. Or, as courts have more colorfully stated:

> " '[W]e must determine whether [the spouse's love and affections for the plaintiff] just drifted away, whether [the spouse] voluntarily floated them away or whether the defendant pirated them away. The liability of the defendant must rest on the last of the three alternatives.' "

Orbeta, 315 Ill. App. 3d at 691, quoting Farrier v. Farrier, 46 Ill. App. 2d 471, 474 (1964). Alienation-of-affections actions have been sharply limited by the Alienation of Affections Act (Act) (740 ILCS 5/0.01 et seq. (West 2004)) and "have been subjected to close and strict judicial scrutiny within very narrow limits both in pleading and proof." Coulter v. Renshaw, 94 Ill. App. 3d 93, 95 (1981).

Plaintiff argues that the intent required for a claim of alienation of affections is the same as the intent required under the willfulness standard of section 523(a)(6). Defendant argues that while sufficient evidence of subjective intent is required for nondischargeability under the Bankruptcy Code,

the Act is satisfied by objective proof of intent. She further argues that even under a standard requiring subjective intent, plaintiff has not met her burden for nondischargeability, because defendant's letter to plaintiff indicates a lack of intent. We need not determine whether the Act requires a showing of subjective or objective intent, because we agree with defendant's latter argument.

Defendant stated in her letter:

"I know the suffering I go through matters nothing to you, but if nothing else, I want you to know I never intentionally wanted any of this to happen. I never wanted to disrupt your marriage. ***

*** I told Gene that maybe you fight so hard because you truly love him. He said he knows you love him. I then said for God's sake, try to win you back."

We agree with defendant that it cannot be inferred from the letter that defendant subjectively intended plaintiff to be injured, and that to the contrary, the letter indicates defendant's total lack of the requisite intent. Cf. Farrier, 46 Ill. App. 2d at 480 (fact that the defendant did not object when the plaintiff's husband sought a reconciliation with the plaintiff was evidence that the defendant had not been trying to alienate the affections of the plaintiff's husband).

Plaintiff argues that we should consider the public policies behind both the Act and section 523(a)(6) of the Bankruptcy Code. She notes that Illinois is one of only a few states to still have a cause of action based on alienation of affections, and she argues that this confirms Illinois's strong "pro-marriage" policy. Plaintiff further notes that section 523(a)(6) prohibits a debtor from discharging a debt for willful and malicious injuries, and she argues that the public policy underlying this exception is to protect people from improper behavior. Plaintiff maintains that the "purpose

behind these laws is to protect people from the exact actions that Defendant has performed," and "[t]o permit Defendant to be discharged from the liability of her actions goes directly against public policy regarding the nondischargeability of improper behavior and the protection of the institution of marriage."

Plaintiff apparently would like us to adopt an expansive interpretation of the Act and exceptions to discharge in the Bankruptcy Code under the guise of public policy, but such an interpretation is contrary to settled law. As stated, the main purpose of the Bankruptcy Code is to give a fresh start to the honest but unlucky debtor (Marrama, 549 U.S. at __, 166 L. Ed. 2d at 961, 127 S. Ct. at 1107), so the creditor has the burden of establishing that a debt is not dischargeable (Grogan, 498 U.S. at 287, 112 L. Ed. 2d at 765, 111 S. Ct. at 659). And while Illinois may have a "pro-marriage" policy, alienation-of-affections actions are subject to strict judicial scrutiny. See Coulter, 94 Ill. App. 3d at 95.

Plaintiff further argues that although proof of intent is required for an alienation-of-affections action, she just needs to prove that defendant had the intent to seduce plaintiff's husband and was successful in doing so. Even if this were true under Illinois law, however, defendant's debt would be discharged unless she subjectively intended to injure plaintiff, or at least subjectively believed that injury was substantially certain to result from her acts. See In re Basel-Johnson, slip op. at 14. As stated, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." (Emphasis in original.) Kawaauhau, 523 U.S. at 61, 140 L. Ed. 2d at 95, 118 S. Ct. at 977. "Injury" refers to "an invasion of any legally protected interest of another." In re Stage, 321 B.R. 486, 492-93 (8th Cir. Bankr. 2005), citing Restatement (Second) of Torts §7(1), at 12 (1965); see also Black's

Law Dictionary 789 (7th ed. 1999) (defining "injury" as, among other things, the "violation of another's legal right, for which the law provides a remedy; a wrong or injustice"). Accordingly, in order to avoid discharge, plaintiff has to prove that defendant subjectively intended to alienate Gene's affections for plaintiff, or subjectively believed that such alienation was substantially certain to result from her acts.

In her reply brief, plaintiff argues that defendant's letter is not believable and is based on "buyer's remorse." She also maintains that it is doubtful that defendant is even apologetic for her actions. Plaintiff argues that defendant herself presented evidence that the letter did not reflect her state of mind. She points out that in defendant's answer to plaintiff's complaint, defendant stated:

> "Plaintiff stated to Defendant on several occasions that she intended to file an alienation of affection actions [sic] against her and ruin her financially, and Defendant believed that in an effort to contrive 'evidence' against Defendant, did certain acts including, but not limited to the following:
>
> * * *
>
> *** When [defendant] finally agreed to speak to [Gene] (as he said in a menacing manner that it was 'in her best interest to do so[']) he insisted that he and [plaintiff] would leave her alone if Defendant would just write a 'letter of apology to [plaintiff].'
>
> *** Defendant in a desperate attempt to placate her tormentors and in a desperate attempt to save her then marriage agreed to write a letter she hoped would make Plaintiff and her spouse go away."

Plaintiff maintains that defendant has contradicted herself as to the letter's intent and that "this contradiction proves Defendant's mental state of intent."

Plaintiff's argument is not persuasive. Although defendant stated that she wrote the letter to "placate her tormentors" and hoped it would make them go away, defendant did not claim that anything she said was untrue, nor does her answer, when considered in conjunction with the letter, lead to the reasonable inference that what she said was false. Indeed, plaintiff herself cites the letter's contents in her opening brief as evidence of defendant's intent.

To the extent that plaintiff is challenging our ability to consider the letter, we note that the letter was produced by plaintiff in discovery, attached as an exhibit to defendant's reply to plaintiff's response to the motion for summary judgment, and discussed by defense counsel during argument on the summary judgment motion. Any claim that the letter is legally insufficient has been waived by plaintiff's failure to raise such an objection in the trial court. See Korogluyan v. Chicago Title & Trust Co., 213 Ill. App. 3d 622, 628 (1991) (appellate court could consider an unauthenticated copy of a letter from the Federal Deposit Insurance Corporation that was attached to the defendant's response to the motion for summary judgment, because the sufficiency of such a document could not be challenged for the first time on appeal); Miller v. St. Charles Condominium Ass'n, 141 Ill. App. 3d 834, 837-38 (1986) (letter that was obtained during discovery, tendered to the trial court before the hearing on the defendant's motion for summary judgment, and relied on extensively by the plaintiff in her argument against the motion, without objection, was properly before the appellate court); see also Kambylis v. Ford Motor Co., 338 Ill. App. 3d 788, 798-99 (2003) (the plaintiff could rely on his expert's report, which was unsworn and not made under oath as an affidavit, as a basis to reverse summary judgment, because the defendant failed to object to its admission in the trial court). Plaintiff's reliance on the letter in her initial brief also waives any objection to its admissibility. See Landmark Properties, Inc. v. Architects International-Chicago, 172 Ill. App. 3d 379, 384 (1988) (the

plaintiffs' argument that exhibits filed in support of motion for summary judgment were not certified was waived because, among other things, the plaintiffs referred to and incorporated parts of the documents in their own pleadings).

Plaintiff further maintains that even if defendant is apologetic, this does not eradicate defendant's original intent and success in seducing Gene. Plaintiff argues that defendant "acknowledges" in the letter that she "can not change the past but only try to learn from mistakes and make it better in the future." Plaintiff argues that defendant "is not an incompetent person and her ability to comprehend the seriousness of a situation is reflected in her letter to Plaintiff"; that it "is not far fetched to assume that Defendant was aware that if Gene was spending time with her, spending money on her and having sexual relations with her, then during those periods, Gene was not able to do the same for the Plaintiff"; and that "it is obvious that this year[-]long relationship between Defendant and Gene caused great harm to Plaintiff and Gene's marital relationship and there is no way that Defendant was not aware of this harm, particularly since Plaintiff and Defendant were at one time, friends." (Emphasis added.)

Regarding plaintiff's alleged original intent to seduce Gene, again the focus of our inquiry is whether defendant subjectively intended to injure plaintiff or subjectively believed that injury was substantially certain to result from her acts. The basic problem with plaintiff's argument is that inferences are to be drawn from the evidence presented, not from the theory of liability presented. If a trier of fact were to decide in plaintiff's favor, its decision should be based upon evidence, not argument. While plaintiff is not required to prove her case at the summary judgment stage, she must provide a factual basis arguably entitling her to judgment in her favor. Brown, Udell & Pomerantz, Ltd., 369 Ill. App. 3d at 824. The party moving for summary judgment has the initial burden of

production, and a defendant may meet that burden by (1) presenting evidence that, if not rebutted, would entitle it to judgment as a matter of law, or (2) showing that the plaintiff would not be able to prove an element of its cause of action. Bourgonje v. Machev, 362 Ill. App. 3d 984, 994 (2005). While a plaintiff may initially rely on its pleadings to create questions of material fact, once the defendant supplies facts demonstrating its entitlement to judgment as a matter of law, the burden shifts to the plaintiff to present some evidence of the defendant's liability that supports each element of the cause of action, thereby presenting an issue of material fact to be decided at trial. Bourgonje, 362 Ill. App. 3d at 995. In other words, as our supreme court has stated, "If the party moving for summary judgment supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opposing party cannot rest on its pleadings to create a genuine issue of material fact." Abrams v. City of Chicago, 211 Ill. 2d 251, 257 (2004). Here, defendant's letter is evidence indicating a lack of subjective intent to injure plaintiff, and plaintiff has not provided any evidence, such as other documents, depositions, or affidavits, to counter this showing of a lack of intent.

We recognize that in determining intent, a person's declarations of intent are entitled to less weight than his or her actions demonstrating intent. See Walsh v. County Officers Electoral Board, 267 Ill. App. 3d 972, 976 (1994); Miller v. Police Board, 38 Ill. App. 3d 894, 898 (1976); see also In re Marriage of Passiales, 144 Ill. App. 3d 629, 635 (1986) ("conduct may negate declarations of intent"). We also recognize that "matters of intent are generally inappropriate for resolution at the summary judgment stage." (Emphasis added.) Thomson Learning, Inc. v. Olympia Properties, LLC, 365 Ill. App. 3d 621, 635 (2006); see also Farmers Automobile Insurance Ass'n v. Williams, 321 Ill. App. 3d 310, 314 (2001), quoting Raprager v. Allstate Insurance Co., 183 Ill. App. 3d 847, 859 (1989) (" 'summary judgment is particularly inappropriate where the inferences which the parties seek

to have drawn deal with questions of motive, intent and subjective feelings and reactions' "). However, in this case plaintiff has failed to present any evidence to counter the declarations of intent contained in defendant's letter, even evidence of particular acts from which a trier of fact arguably could discredit defendant's declarations. Thus, there is no question of material fact that defendant's potential liability does not fit within the section 523(a)(6) exception for "willful and malicious injury," which means that the debt was, therefore, discharged in defendant's bankruptcy.

### III. CONCLUSION

In sum, we conclude that the trial court properly granted summary judgment for defendant because the evidence, even when viewed in the light most favorable to plaintiff, does not create a genuine issue of fact that would preclude defendant's potential liability to plaintiff from being discharged in defendant's bankruptcy.

For the foregoing reasons, we affirm the judgment of the Du Page County circuit court.

Affirmed.

CALLUM, J., concurs.

JUSTICE McLAREN, specially concurring:

I specially concur because I believe that the cause of action of alienation of affections, as pled in this cause, was dischargeable in bankruptcy as a matter of law. Therefore, I do not believe that it was necessary to address whether summary judgment was correctly granted on the merits.

The majority does an admirable job of explaining that debts are not dischargeable if they are "for willful and malicious injury by the debtor." The majority expounds on the federal statutory and case law and the definitions of willful and malicious, then compares these definitions to the elements of the Illinois cause of action of alienation of affections.

However, the majority does not address the method of pleading alienation of affections in the alternative, i.e., with or without the "gist of malice." According to early Illinois cases regarding alienation of affections, the cause could be pled with or without the "gist of malice." If the trier of fact found malice, the defendant could be kept in jail until satisfaction of the judgment; if not, the defendant could not be incarcerated. See generally In re Petition of Monaco, 287 Ill. App. 540 (1936).

I believe that the majority should have first considered whether the pleading alleged malice. If the majority had determined that the pleading alleged malice, then the majority was correct in addressing the grant of the summary judgment. However, a fair reading of the complaint will readily establish that malice was not alleged. Therefore, regardless of the merits of her claim, plaintiff could not prevent discharge. By recognizing the existence of the alternative methods of pleading alienation of affections (with or without malice) and then reviewing the complaint for any allegations of malice in this case, the majority should have determined that the complaint filed did not plead malice and that, as a matter of law, the debt was dischargeable. See In re Petition of Blacklidge, 359 Ill. 482 (1935). In Blacklidge, our supreme court defined malice and pointed out:

"The 'gist of the action' constitutes the essential ground or object of a suit, without which there is not a cause of action. [Citations.] Malice may be made the gist of the action if properly pleaded. [Citations.] Whether malice is the gist of a particular action is to be determined from the charges made in the declaration. [Citations.]" Blacklidge, 359 Ill. at 489.

Even if there were a judgment entered in favor of plaintiff, it would not contain any indication that malice was the "gist of the action." Thus, it would have been the type of claim that is discharged in bankruptcy. The trial court was correct in determining that "the claim was discharged in

bankruptcy" based upon the pleadings. Furthermore, based upon the pleadings, it was unnecessary for the trial court or this court to determine if plaintiff failed to present sufficient material facts to preclude summary judgment on the merits of her underlying claim.