*In re* M.D.H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Johnny Ray Howell, Respondent-Appellant (Cheryl Baxter, Respondent)).

Fourth District    No. 4—98—0038

Opinion filed June 26, 1998.

Michael J. Hollahan, of Hollahan Law Office, of Pittsfield, for appellant.

Brett Irving, State's Attorney, of Pittsfield (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1997, the State filed an amended petition for adjudication of wardship, alleging that M.D.H. (born November 13, 1981), the minor child of respondent father, Johnny Howell, and respondent mother, Cheryl Baxter, was neglected and abused. In November 1997, the trial court conducted a hearing and found that M.D.H. was a neglected and abused minor, pursuant to sections 2—3(1)(b) and 2—3(2)(iii) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—3(1)(b), (2)(iii) (West 1996)). After a December 1997 dispositional hearing, the court formally adjudicated M.D.H. a ward of the court and appointed the Department of Children and Family Services (DCFS) as her guardian with the power to place her.

Respondent father appeals, arguing that (1) the trial court erred by allowing M.R.H., M.D.H.'s 13-year-old brother, to testify outside of respondent father's presence; (2) the court erred by refusing to strike a certain witness' testimony; and (3) the court's findings of neglect and abuse were against the manifest weight of the evidence. We affirm.

## I. BACKGROUND

Because the parties are familiar with the evidence, we discuss it only to the extent necessary to put respondent father's arguments in context. In its September 1997 amended petition, the State alleged that (1) respondent father had neglected M.D.H. because he created an environment injurious to her welfare in that he put her at risk of sexual harm by sexually abusing S.H., M.D.H.'s minor brother, and L.G., M.D.H.'s minor stepsister (count I) (705 ILCS 405/2—3(1)(b) (West 1996)); and (2) respondent father had abused M.D.H. because he committed a sex offense against M.D.H. by having sexual intercourse with her (count II) (705 ILCS 405/2—3(2)(iii) (West 1996)).

At the November 1997 adjudicatory hearing, the evidence showed the following. Sheila Catron, a social service worker in Lewis County, Missouri, testified that, in May 1997, she interviewed S.H. (born June 15, 1991) pursuant to a report that he had attempted to kiss his female cousin's "crotch area" during an after-school program. During the interview, S.H. told her that respondent father had taught him how to kiss respondent father's private area. S.H. told Catron that respondent father asked him "to get under his father to kiss his private area." S.H. also correctly identified the genital area using a stuffed animal. Catron stated that, based upon S.H.'s responses, these

incidents took place when S.H. was between three and six years of age.

David Parrish, a juvenile officer in Lewis County, testified substantially the same as Catron regarding what S.H. said during the May 1997 interview.

On cross-examination, Catron testified that S.H.'s mother had told her that "with [S.H.'s] age and stuff[,] he did like to tell stories." S.H.'s counselor also indicated that he had "a very large imagination."

S.H. testified that he used to live with respondent father, but he moved out because respondent father tried "to do the sex" with S.H. when S.H. visited him. S.H. stated that respondent father was "going to try to touch [S.H.'s] private and [S.H.] didn't want him to do it." Respondent father also wanted S.H. to touch respondent father's "private," but S.H. never did. S.H. also stated that the incident happened in June, "a long time ago." S.H. further stated that M.D.H. was there and tried to stop respondent father.

On cross-examination, S.H. testified that the incident happened when he was two years old. S.H. stated that he did not know the present year or month. Upon questioning by the trial court, S.H. testified that he knew the difference between the truth and a lie.

Dr. Shari Marshall, the superintendent of schools for the Barry, Illinois, school system (where M.D.H. was a junior high school student during 1996), testified that in March 1996, M.D.H. came to her office and asked to speak with Marshall. M.D.H. was "very upset and crying." During that conversation, M.D.H. told Marshall that "[s]he felt that she was being required to do many, many, many chores, her homework, take care of her little brother[,] *** [and] [s]he just felt like she was just being required to be a wife." Marshall stated that because of an earlier conversation, she asked M.D.H. if by being a wife M.D.H. meant that she also slept with respondent father. M.D.H. responded "sometimes." Marshall also stated that because of the earlier conversation, she thought M.D.H. meant that she slept with respondent father "in a sexual manner." Marshall acknowledged that M.D.H. recanted within a week of their conversation and that M.D.H. "told DCFS that that's not what she meant."

On cross-examination, Marshall testified that she instructed the school principal to report to DCFS the possible sexual relationship between M.D.H. and respondent father. Marshall stated that, in May 1996, DCFS sent the principal a letter indicating that it had investigated the report and determined that it was "unfounded."

On redirect examination, Marshall testified that when she asked M.D.H. what she meant by having to do "everything else a wife has to do," M.D.H. began crying harder and responded, "you know, everything."

M.R.H., M.D.H.'s brother and respondent father's biological child, testified that during the summer of 1995, he lived with respondent father and M.D.H. for a period of two to three months. M.R.H. stated that, one evening during that period, he came home and noticed that the television was on at a loud volume. He turned the television off and then looked in respondent father's room because he thought he heard M.D.H. say "help." He saw respondent father on top of M.D.H., "moving up and down." Respondent father and M.D.H. were covered up to their backs, and neither was wearing any clothing that M.R.H. could see.

On cross-examination, M.R.H. testified that he did not tell anyone about the incident because he did not think it was anyone's business. M.R.H. also stated that he observed respondent father and M.D.H. for about one minute. M.R.H. further stated that he takes Prozac, Ritalin, and a blood pressure medication, and he attends classes for students with behavior disorders. He also acknowledged that he did not like respondent father, and he moved out of respondent father's home, in part, because respondent father had broken a "2 by 4" and a pool cue over his back.

M.D.H. testified that respondent father had not acted in a sexually inappropriate manner with her, and she had never told anyone otherwise. She stated that she talked with Marshall because she was upset about having to do chores. She also stated that she forgot to tell Marshall that when she slept in respondent father's bed, he slept on the couch.

On cross-examination, M.D.H. testified that Marshall did not ask her what she meant by the phrase "everything that a wife has to do." She denied telling Marshall that "everything" meant "you know, everything." She stated that following their conversation, she tried to explain to Marshall what she had meant, but Marshall was too busy.

Based on this evidence, the trial court adjudicated M.D.H. a neglected minor based upon respondent father's sexual abuse of S.H., as alleged in count I, and an abused minor as alleged in count II. The court found that the State failed to prove that respondent father had sexually abused L.G. as alleged in count I.

## II. ANALYSIS

### A. M.R.H.'s Testimony Outside of Respondent Father's Presence

■ Respondent father first argues that the trial court erred by allowing M.R.H. to testify outside respondent father's presence. We disagree.

Section 2—18(4)(d) of the Act provides as follows:

"There shall be a rebuttable presumption that a minor is

competent to testify in abuse or neglect proceedings. The court \*\*\* may allow the minor to testify in chambers with only the court, the court reporter[,] and attorneys for the parties present." 705 ILCS 405/2—18(4)(d) (West 1996).

Section 1—3(10) of the Act defines "minor" as "a person under the age of 21 years subject to this Act." 705 ILCS 405/1—3(10) (West 1996).

Respondent father objected to M.R.H.'s testifying outside of respondent father's presence on the ground that section 2—18(4)(d) of the Act does not permit a nonparty minor who was not named in the petition to testify outside of a respondent's presence. The court overruled respondent father's objection and stated the following:

"The [c]ourt does have wide discretion. The statute is clear that the minor that is the subject of abuse can testify outside of the presence of the parents or the respondents. The theory I assume is that it would put pressure on a minor to be required to testify in front of their parent or parents of acts that were committed by their parent or parents against them or other children. The pressure would still exist in the case of an observer, in other words, pressure to testify to an incident in front of their parent or parents, so I will allow this witness to testify."

■ We agree with the trial court that—under the circumstances of this case—M.R.H., a then 13-year-old child, would have experienced a similar fear of and pressure about testifying in the presence of respondent father as would a child who was the subject of the abuse petition. M.R.H. testified that he watched his father commit a morally reprehensible act upon M.D.H. Specifically, M.R.H. saw his father and M.D.H. in bed together without any clothes on their upper bodies, and his father was on top of M.D.H., "moving up and down." Moreover, M.R.H.'s testimony that his father had previously hurt him by breaking a "2 by 4" and a pool cue over his back provides further support for M.R.H.'s fear of testifying in respondent father's presence.

■ The overriding purpose of the Act is "to ensure that the best interests of the minor, the minor's family, and the community are served." *In re J.J.*, 142 Ill. 2d 1, 8, 566 N.E.2d 1345, 1349 (1991). At each step of the adjudication process, the trial court has a duty to further that purpose. *In re A.F.*, 234 Ill. App. 3d 1010, 1014, 602 N.E.2d 480, 483 (1991). In addition, the trial court shall administer the Act "in a spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court." 705 ILCS 405/1—2(2) (West 1996). Furthermore, a proceeding under the Act constitutes a civil proceeding—meaning that no sixth amendment right to confront witnesses is

implicated (U.S. Const., amend. VI)—and is nonadversarial in nature. *J.J.*, 142 Ill. 2d at 8, 566 N.E.2d at 1348-49; *In re Brooks*, 63 Ill. App. 3d 328, 340, 379 N.E.2d 872, 881 (1978).

Section 2—18(4)(d) of the Act does not expressly authorize a nonparty minor to testify outside the respondent's presence. Nonetheless, considering (1) the overriding purpose of the Act, (2) that the trial court has a *duty* to ensure that the best interests of not only the minor but the minor's family are served at every stage of the proceedings under the Act, and (3) that the court must administer the Act "in a spirit of humane concern" for "all who appear before the court," we conclude that, under the particular circumstances present in this case, the court did not err by allowing M.R.H., a minor child of respondent father, to testify outside of respondent father's presence.

We find support for this conclusion in *Brooks*, in which the appellate court—prior to the enactment of section 2—18(4)(d) of the Act in Public Act 85—601 (Pub. Act 85—601, eff. January 1, 1988 (1987 Ill. Laws 2578, 2683))—upheld a trial court's decision to allow a minor to testify outside the respondents' presence, but with counsel for all parties present. In upholding the trial court's decision, the *Brooks* court wrote the following:

> "[A] child-neglect case is a nonadversary proceeding and the primary concern is the best interests and welfare of the child. [Citation.] As in custody cases, the trial court must have discretion to interview the child in the privacy of chambers. Generally, there is an inherent fear in the child to testify, which may be an obstacle to ascertaining the truth." *Brooks*, 63 Ill. App. 3d at 340, 379 N.E.2d at 881-82.

### B. The Trial Court's Refusal To Strike Marshall's Testimony

Respondent father next argues that the trial court erred by refusing to strike Marshall's testimony because DCFS investigated Marshall's report of possible sexual relations between respondent father and M.D.H. and determined that the report was "unfounded." Specifically, he contends that either (1) DCFS' "unfounded" report should have been admitted into evidence; or (2) the court should have stricken Marshall's testimony. We disagree.

Initially, we note Marshall testified that, in May 1996, the principal of M.D.H.'s school received a letter from DCFS indicating that it had determined that the report of possible sexual relations between respondent father and M.D.H. (based upon Marshall's March 1996 conversation with M.D.H.) was unfounded. Thus, the trial court had before it—and could consider—the fact that DCFS had determined that the report was unfounded. Indeed, the court specifically indicated—in response to a question by respondent father's counsel—

that it had heard the evidence that DCFS had determined that the report was unfounded. The court also noted that none of the parties even requested that the unfounded report be admitted into evidence.

Respondent father also asserts that the trial court should have stricken Marshall's testimony because it "was not corroborated by a 'founded' report, and thus admissible by [section 2—18(4)(a) of the Act] (705 ILCS 405/2—18(4)(a)[) (West 1996)]." The problem with this assertion—as the State correctly points out—is that Marshall's testimony was admissible pursuant to section 2—18(4)(c) of the Act, *not* section 2—18(4)(a) (which provides for the admission of "[a]ny writing, record, photograph[,] or x-ray of any hospital or public or private agency") (705 ILCS 405/2—18(4)(a) (West 1996)). Section 2—18(4)(c) provides that "[p]revious statements made by the minor relating to any allegations of abuse or neglect *shall be* admissible in evidence." (Emphasis added.) 705 ILCS 405/2—18(4)(c) (West 1996); *In re N.S.*, 255 Ill. App. 3d 768, 776, 627 N.E.2d 1178, 1184 (1994). Thus, we hold that the court did not err by refusing to strike Marshall's testimony regarding M.D.H.'s statements to her.

## C. Adjudication of Neglect

Respondent father next argues that the trial court's finding of neglect was against the manifest weight of the evidence. We disagree.

Initially, we address respondent father's contention that, to prove that M.D.H. was neglected due to an injurious environment, the State was required to prove that respondent father committed the offense of criminal sexual abuse against S.H., as defined in the Criminal Code of 1961 (Code) (720 ILCS 5/12—15(a)(2) (West 1996)). He thus claims that the State failed to sustain its burden of proof because the trial court found only that respondent father attempted to touch S.H.'s sex organs and asked S.H. to touch respondent father's sex organs. We disagree.

In count I of its amended petition, the State alleged, in relevant part, that respondent father had neglected M.D.H. because he created an environment injurious to her welfare in that he put her at risk of sexual harm by sexually abusing S.H., M.D.H.'s minor brother (705 ILCS 405/2—3(1)(b) (West 1996)). In adjudicating M.D.H. neglected based upon an injurious environment as alleged in count I, the trial court found that respondent father "did at least attempt to touch [S.H.'s] private parts and asked [S.H.] to touch his private parts," and sufficient evidence existed "that the environment in the home of [respondent father] is injurious to the welfare of the minor child [M.D.H.] based on his sexual abuse of S.H."

Proof that one minor is neglected, abused, or dependent is admis-

sible evidence on the issue of neglect, abuse, or dependency of any other minor for whom the parent is responsible. In addition, a parent's behavior toward one minor may be considered when deciding whether a sibling is exposed to an injurious environment. *In re K.G.*, 288 Ill. App. 3d 728, 736, 682 N.E.2d 95, 100 (1997).

In *In re Z.R.*, 274 Ill. App. 3d 422, 654 N.E.2d 255 (1995), the State alleged that the minor, Z.R., was neglected based upon an injurious environment in that respondent uncle made inappropriate sexual comments to his 10-year-old niece (J.K.) and exposed himself to his 8-year-old nephew (C.K.). In upholding the trial court's determination that Z.R. was neglected based upon an injurious environment, this court wrote the following:

> "A finding of *abuse* of one sibling establishes a *prima facie* case of neglect based upon an injurious environment to another. [Citations.]
>
> Although respondent was found to have made inappropriate sexual comments to J.K. and exposed himself to C.K., he argues there is no indication in the record Z.R. was even aware of the conduct, let alone affected by it. Neglect due to injurious environment has been found where the child did not know about nor was he exposed to *sexual abuse* of a sibling [citation] and where the father was previously adjudged unfit because of sexual abuse of daughters by a prior marriage but had failed to address the problem even though there was no evidence of sexual abuse of the children of the present marriage [citation]." (Emphasis added.) *Z.R.*, 274 Ill. App. 3d at 427-28, 654 N.E.2d at 259.

In *Z.R.*, this court concluded—implicitly, at least—that a respondent's inappropriate sexual comments and exposure of himself to another child constitute "sexual abuse," and a finding of such abuse establishes a *prima facie* case of neglect based upon an injurious environment. *Z.R.*, 274 Ill. App. 3d at 427-28, 654 N.E.2d at 259.

Consistent with *Z.R.*, we conclude that when the State alleges—as in this case—that a minor is neglected due to an injurious environment based upon the respondent's "sexual abuse" of a sibling, "sexual abuse" may have a broader meaning than "criminal sexual abuse" as it is defined in section 12—15(a)(2) of the Code (720 ILCS 5/12—15(a)(2) (West 1996)).

In so concluding, we note that were we to accept respondent father's contention, the trial court here could not have found M.D.H. to be a neglected minor based upon an injurious environment as a result of respondent father's attempting to touch S.H.'s sex organs or his requests that S.H. touch respondent father's sex organs. Clearly, such conduct on respondent father's part falls within the concept of

statutory neglect based upon an injurious environment. See *In re B.M.*, 248 Ill. App. 3d 76, 79, 618 N.E.2d 374, 376 (1993) (the concept of "injurious environment" is amorphous and cannot be defined with particularity; therefore, each case must be reviewed based upon its specific facts). Thus, the court could consider respondent father's sexual abuse of S.H. (by attempting to touch S.H.'s sex organs and requesting that S.H. touch respondent father's sex organs) in determining whether M.D.H. was a neglected minor based upon an injurious environment. See *K.G.*, 288 Ill. App. 3d at 736, 682 N.E.2d at 100; see also *Z.R.*, 274 Ill. App. 3d at 427-28, 654 N.E.2d at 259. Moreover, we note that accepting respondent father's contention would be contrary to the overriding purpose of the Act—namely, "to ensure that the best interests of the minor, the minor's family, and the community are served." *J.J.*, 142 Ill. 2d at 8, 566 N.E.2d at 1349.

In a proceeding under the Act for adjudication of abused, neglected, or dependent minors, the State must prove its allegations by a preponderance of the evidence. *N.S.*, 255 Ill. App. 3d at 776, 627 N.E.2d at 1184. We will not disturb a trial court's findings that a child was abused or neglected unless they are against the manifest weight of the evidence. *In re B.W.*, 216 Ill. App. 3d 410, 414, 576 N.E.2d 346, 349 (1991). Further, this court in *Z.R.*, 274 Ill. App. 3d at 427, 654 N.E.2d at 258-59, wrote the following:

> "A finding of the trial court is *** against the manifest weight of the evidence only if a review of the record 'clearly demonstrates' the opposite result was the proper one. [Citation.] We will not overturn the trial court's findings merely because we might have reached a different conclusion. We will not second-guess the trial court on the issue of credibility. The trial court is in the best position to determine the credibility of witnesses."

In *Z.R.*, this court upheld on appeal the trial court's finding of neglect despite discrepancies between the prior statements and trial testimony of the child witnesses. *Z.R.*, 274 Ill. App. 3d at 427, 654 N.E.2d at 259.

In finding that M.D.H. was neglected, the trial court stated, in relevant part, the following:

> "We have the testimony of Miss Catron who investigated an incident involving [S.H.] that was called in through the hotline where [S.H.] indicated in response to being questioned about some improper touching at the [after-school program]; that during visitation with [respondent] father[,] his father taught him to do it and some other language about privates of his father's and his. Seemed to be a rather frank response from a child who was fairly young at the time, one that I don't believe was an effort to pin something on his father to get himself out of trouble.
> * * *

[We also have t]he evidence of David Parrish, that he likewise interviewed [S.H.] and his answers were consistent with that of Miss Catron's.

\* \* \*

We have the testimony of [S.H.], [a six-]year[-]old minor who really I thought did a fairly good job testifying. He certainly has a problem with dates. I do find him to be a person who knew the difference between telling the truth and telling a lie. I do find that his testimony was credible, that his father did at least attempt to touch his private parts and asked him to touch his private parts.

\* \* \*

\*\*\* I believe there was an argument about the word sexual abuse being defined in the statute, not being within the—not being with the exact evidence that has been submitted here today. In this [c]ourt's opinion[,] there is sufficient evidence before this [c]ourt that shows that the environment in the home of [respondent father] is injurious to the welfare of the minor child [M.D.H.] based on his sexual abuse of S.H."

Reviewing the record before us in accordance with the proper standard of review, we cannot conclude that it " 'clearly demonstrates' the opposite result was the proper one." *Z.R.*, 274 Ill. App. 3d at 427, 654 N.E.2d at 259, quoting *In re T.B.*, 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893, 896 (1991). Accordingly, we hold that the trial court's adjudication of M.D.H. as a neglected minor was not contrary to the manifest weight of the evidence.

## D. Adjudication of Abuse

Last, respondent father argues that the trial court's finding of abuse was against the manifest weight of the evidence. We disagree.

As earlier stated, we will not disturb a trial court's findings that a child was abused or neglected unless they are against the manifest weight of the evidence. *B.W.*, 216 Ill. App. 3d at 414, 576 N.E.2d at 349.

In finding that M.D.H. was abused, the trial court stated, in relevant part, the following:

"The [c]ourt has considered the evidence adduced in these proceedings and the arguments of counsel.

\* \* \*

[We have the t]estimony of Dr. Marshall. Now, the fact that Dr. Marshall did not appear at the first hearing in my opinion adds to her credibility. Dr. Marshall at the outset had a discussion with the minor who is the primary subject of this petition. \*\*\* Dr. Marshall is an educator and a very sensibly educated person. She understands things that are said to her that may not be said in specific language.

The discussion between Dr. Marshall and the minor[,] in this [c]ourt's opinion[,] clearly was an admission by the minor that she was having sexual relations with [respondent] father, and I specifically find Dr. Marshall's testimony in that aspect to be credible.

We then have today testimony of [M.R.H.] ***. *** [M.R.H.] has certain problems in and of himself that are being addressed through medication. I didn't find the effects of his medication in any way [detracted] from his credibility. He testified to observing an incident. Wasn't exactly sure when it occurred but it was well over a year ago. He *** was pretty specific as to what he saw. He was really consistent in his answers except for a few[,] which does not totally—which is not unexpected. I think and I do find that [M.R.H.'s] testimony was credible, that he saw what he said he saw.

\* \* \*

Then we have the testimony of [M.D.H.], and I can certainly understand the dilemma that [M.D.H.] is facing and faced today. A person who she has lived with for the entirety of her life and who has been her primary caretaker for all but 6 months or a little bit more than that of her life is[,] in this [c]ourt's opinion[,] a person who she has had a sexual relationship with; and to come to [c]ourt and have to acknowledge that, indicate that that occurred, would be a very difficult situation. So the reasons for her testimony not being credible are fairly evident, and I do not find her testimony to be credible.

\* \* \*

Count 2 said minor is an abused minor as defined under [section 2—3(iii) of the Act] [()705 ILCS 405/2—3(iii) (West 1996)[)] in that the minor's father has committed a sex offense against the minor by having sexual intercourse with her. Certainly what [M.R.H.] observed gave the appearances of sexual intercourse. The minor[,] in this [c]ourt's opinion[,] did admit to Dr. Marshall, although not using those words, but sexual intercourse had taken place. Therefore, the [c]ourt does find again by a preponderance of the evidence that Count 2 has been proven."

Reviewing this record in accordance with the proper standard of review, we conclude that the trial court's adjudication of M.D.H. as an abused minor was not contrary to the manifest weight of the evidence.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GARMAN, P.J., and McCULLOUGH, J., concur.