4 August 2000

No. 2--99--1159

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

JULITA E. ORBETA, ) Appeal from the Circuit Court

) of Du Page County.

Plaintiff-Appellant, )

)

v. ) No. 97--L--1034

)

ALITA GARCIA PEREZ GOMEZ, ) Honorable

) C. Stanley Austin,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Julita Orbeta (Julita), filed suit against defendant, Alita Garcia Perez Gomez (Alita), for alienating the affections of Julita's husband, Dr. Gregorio Orbeta (Gregorio).  At the close of Julita's case in the bench trial of this matter, the trial court granted Alita's motion for a directed finding and entered judgment in Alita's favor.  Julita argues that the trial court erred in directing a finding in Alita's favor and was predisposed to rule for Alita.  We disagree and affirm the judgment of the trial court for the following reasons.

Julita and Gregorio married in 1966 and had two children together.  According to Gregorio, he had sexual relationships with numerous women other than his wife during the course of the marriage.  One of these women was Alita, who had been friends with the Orbetas since the early 1980s.  At the time of her relationship with Gregorio, which lasted from 1988 through 1996, Alita was also married and had five children.  Julita discovered the affair in December 1995 when she came home unexpectedly one afternoon and found Gregorio getting dressed and Alita looking disheveled.

Julita presented testimony from several friends and relatives who said that, prior to December 1995, Julita and Gregorio appeared to have an affectionate and loving relationship.  Julita believed that she and Gregorio had a happy, loving relationship.  Prior to Julita's discovery of Gregorio's affair with Alita, she knew of one other affair he had.

Alita testified that in June 1988 Gregorio called her and told her that she was a very attractive woman and that he would like to "eat her."  Every time Gregorio saw Alita, he would compliment her on her appearance.  Gregorio testified that he and Alita first had sex one evening when Julita was out of the country.  That evening, in 1988, the Orbeta children went to a concert with some of Alita's children.  Julita had invited Alita's children to spend the night at her home.  Alita brought her children to the Orbetas' house and Gregorio drove them to the concert.  Gregorio instructed Alita to wait at his house while he was gone in case he received any phone calls.  Alita did so, and when Gregorio returned he kissed Alita and told her he wanted to make love to her.  Alita said no, but Gregorio persisted and, according to Gregorio, she relented.  Alita invoked the protection of the fifth amendment every time she was asked if she had sexual intercourse with Gregorio.

Alita testified that the day after the concert Gregorio called her and told her he wanted to see her.  She said no, but he begged her to see him one more time.  Alita agreed, and Gregorio drove to Indiana, where Alita lived, while her husband and children were out of town.  A couple of days later Gregorio called again asking Alita to meet him.  Alita again said no but then agreed to see him.

During their relationship Alita met Gregorio several times at hotels near his home in Oak Brook.  Alita often paid for their hotel rooms.  She was also seen at Gregorio's office and at the hospital where he worked.  Alita bought Gregorio gifts.  It is undisputed that she bought him a sweater.  Julita presented testimony that Alita bought Gregorio an expensive saxophone, but Alita testified that Gregorio paid for it.

At the close of Julita's case, Alita moved for a directed finding in her favor.  The trial court granted Alita's motion and entered judgment in her favor.  This appeal followed.

While both parties accurately state the standard of review in their briefs to this court, it appears from the record that in the trial court they advocated, and the trial court applied, the standard for deciding a motion for a directed verdict in a jury trial instead of the standard for a motion for a directed finding in a bench trial.  When a defendant brings a motion for directed verdict during a jury trial, the court must determine whether the evidence, viewed in the light most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict could ever stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 501 (1967).  That standard does not apply to motions for a directed finding made during a bench trial and, thus, did not apply to Alita's motion in the instant case.  

"In a 
bench
 trial, where the trial court 
is
 the fact finder, a motion for a 'directed verdict' is governed not by 
Pedrick
 but by section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 1998))."  (Emphasis in original.)  
Zankle v. Queen Anne Landscaping
, 311 Ill. App. 3d 308, 311 (2000).  Under section 2-

1110, the trial court must "weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence."  735 ILCS 5/2-1110 (West 1998).  Therefore, as we stated in 
Zankle
, "the trial court does not view the evidence most favorably to the plaintiff but rather (1) determines whether the plaintiff has made out a 
prima facie
 case, then (2) weighs the evidence, including that which favors the defendant."  
Zankle
, 311 Ill. App. 3d at 311.  If, after weighing the evidence, the court decides that evidence necessary to plaintiff's 
prima facie
 case has been negated, the court should grant the motion for a directed finding and enter judgment for the defendant.  
Zankle
, 311 Ill. App. 3d at 311.  A reviewing court will not reverse a trial court's determination of a motion for a directed finding unless it is contrary to the manifest weight of the evidence. 
Zankle
, 311 Ill. App. 3d at 311.

Even though the trial court applied the wrong standard when deciding Alita's motion, it is not necessary to reverse or remand this cause because Julita was not prejudiced in any way by the error.  The trial court weighed Julita's evidence in a more favorable light than it would have under the correct standard.  Even under the light most favorable to Julita, the trial court concluded that she could not prove all of the elements of her cause of action.

A cause of action for alienation of affections consists of three elements: (1) love and affection of the alienated spouse for the plaintiff; (2) actual damages incurred by the plaintiff; and (3) overt acts, conduct, or enticement on the part of the defendant causing those affections to depart.  
Coulter v. Renshaw
, 94 Ill. App. 3d 93, 95 (1981). After reviewing the evidence, we conclude that the trial court's decision was not against the manifest weight of the evidence.  

The trial court found that Julita failed to establish that Alita instigated the relationship with Gregorio or enticed his affections away from Julita.  Rather, the court concluded from the evidence that Gregorio was the aggressor and seducer.  The court relied on Gregorio's prior extramarital affairs, his phone calls to Alita asking to see her, and the arrangements he made to meet with Alita.

Julita contends that Illinois law on this subject is not sufficiently clear and urges us to look to North Carolina law for assistance in making our decision.  We decline to do so because the relevant Illinois authority adequately addresses the issue before us.

Julita asserts that Illinois authority does not answer the questions of whether a defendant's conduct must be the only cause of the alienation of a spouse's affections or whether a defendant may still be liable if he or she is a contributing cause but not the only cause.  In our view, the answer to this question is not relevant to the issues before us.  The important issue on the facts before us is Alita's intent, not whether there were multiple causes of Julita and Gregorio's breakup.  Absent the requisite intent, Alita cannot be liable.

In 
Farrier v. Farrier
, 46 Ill. App. 2d 471 (1964), the court, using a nautical analogy, framed the issue as follows:

"[W]e must determine whether [the spouse's love and affections for the plaintiff] just drifted away, whether [the spouse] voluntarily floated them away or whether the defendant pirated them away.  The liability of the defendant must rest on the last of the three alternatives."  
Farrier
, 46 Ill. App. 2d at 474.

The court noted further that " 'it is necessary to show that the person who is charged with wrong was the blamable party, and that she by some act or words had wrongfully and willfully sought to draw the affections of appellee's husband from appellee to herself, and had succeeded in doing so.' "  
Farrier
, 46 Ill. App. 2d at 478, quoting 
Smith v. Gillapp
, 123 Ill. App. 121, 124 (1905).

As in 
Farrier
, the record in this case is devoid of "any act or word of the defendant which affirmatively initiated, induced, enticed or purloined the love and affections of [plaintiff's spouse] from the plaintiff to the defendant."  
Farrier
, 46 Ill. App. 2d at 480.  Gregorio initiated phone calls to Alita in which he made sexual comments.  He initiated their first physical encounter, called Alita afterward, and begged to see her when she refused.  While Julita presented evidence of and Alita admitted to conduct that was reproachable, none of it established willful and wrongful intent on Alita's part to pirate away Gregorio's affections.  Accordingly, the trial court's finding that Julita failed to establish one of the requisite elements of an action for alienation of affections was not against the manifest weight of the evidence.

In light of our determination, we need not consider whether Julita presented sufficient evidence of actual damages.

Julita's final argument that the trial court was predisposed to enter judgment in Alita's favor merits little discussion.  Julita relies partially upon an affidavit by her trial attorney that was not part of the record on appeal, and partially on a few comments made by the trial judge that Julita takes out of context.  We struck the affidavit by Julita's attorney and therefore do not consider it.  Further, the comments to which Julita refers do not even remotely suggest that the trial court was predisposed to rule against her.

Accordingly, we affirm the granting of the motion for a directed finding and the entry of judgment in Alita's favor.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.