747 N.E.2d 440 (2001)
319 Ill. App.3d 865
254 Ill.Dec. 400
In re L.M., a/k/a L.B., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
W.B., Respondent-Appellant).
No. 2-00-0501.
Appellate Court of Illinois, Second District.
April 5, 2001.
Elliot A. Pinsel (Court-appointed), Daniels, Long & Pinsel, Waukegan, for W.B.
Michael J. Waller, Lake County State's Attorney, Waukegan, Martin P. Moltz, Deputy Director, Diane L. Campbell, *441 State's Attorneys Appellate Prosecutor, Elgin, for the People.
Justice McLAREN delivered the opinion of the court:
Respondent, W.B., a/k/a K.B., appeals from an order finding his daughter, L.M., a/k/a L.B., neglected. The dispositional order provided that respondent was not to have any contact with L.M. or the minor's mother, M.M. Respondent argues on appeal that the trial court erred when it denied respondent's motion for a directed finding and found that the neglect petition was proved by a preponderance of the evidence. We reverse.
Respondent was 26 years old when he began dating M.M., who was 16 years old. Nine months after respondent started dating M.M., L.M. was conceived. L.M. was born on March 30, 1999. On July 14, 1999, respondent was convicted of five counts of aggravated criminal sexual abuse of M.M. (720 ILCS 5/12-16(d) (West 1998)), and he was ordered not to have any contact with M.M. On July 15, 1999, M.M. left L.M. in respondent's care. Because L.M. was left in respondent's care, the State filed a petition on July 16, 1999, to adjudicate L.M. neglected. The petition was filed against both respondent and M.M. The basis for the neglect petition was that L.M. had been left in an injurious environment. The State claimed that L.M.'s environment was injurious to her welfare because she was left in respondent's care and respondent was an untreated sex offender, having been convicted of aggravated criminal sexual abuse of M.M. on July 14, 1999.
On August 27, 1999, respondent was sentenced to 36 months' probation for aggravated criminal sexual abuse, and he was ordered to obtain a sex offender evaluation within 30 days and follow all recommendations. The probation order also provided, among other things, that respondent must support his dependents, not have contact with M.M. for 12 months, and refrain from any contact with nonrelated females who are between 12 and 18 years old.
On November 4, 1999, the adjudication hearing was held. At the hearing, Detective Mark Ross Corbett testified that on July 15, 1999, he participated in a surveillance of respondent's home. The officer conducted the surveillance because a warrant for defendant's arrest had been issued for an unrelated matter. When Officer Corbett arrived at respondent's house, he stayed in his car and did not see anyone around the house. However, within 10 minutes he saw respondent exit his house carrying an infant. Officer Corbett approached respondent, apprehended respondent on the warrant, and took protective custody of the infant, L.M. On cross-examination, Officer Corbett testified that he did not see respondent harm L.M. in any way, and the officer stated that he could not remember whether respondent told him that there was someone in the house who could care for L.M. after Officer Corbett took respondent into custody.
Tim Rossi testified that on July 15, 1999, he was an investigator with the Illinois Department of Children and Family Services. Rossi was called on that date because L.M. had been taken into protective custody by the police and was in need of placement. During his investigation, Rossi talked with M.M. M.M. told Rossi that on July 15, 1999, she took L.M. to see respondent for an indefinite period of time because L.M. needed to bond with respondent. M.M. knew that respondent had been convicted of aggravated criminal sexual abuse on July 14, 1999, but M.M. did not believe that respondent posed a risk to either herself or L.M. Rossi testified that he did not speak with respondent, and Rossi stated that he did not believe that *442 respondent had sought treatment as a sex offender.
Respondent moved for a directed finding, arguing that the State failed to prove that L.M.'s environment was injurious to her welfare. The court denied the motion, finding that respondent was a sex offender at the time he was caring for L.M.
Respondent testified that M.M. brought L.M. to his house on July 15, 1999. Respondent's 17-year-old cousin and respondent's barber were in the house when M.M. arrived. At around 4 p.m., respondent was walking outside with L.M. when the police arrested him. Respondent's cousin was in the house at that time, and respondent testified that he told a detective that the cousin could watch L.M. until respondent's sister came home from work.
The court found that the petition to adjudicate L.M. a neglected minor had been proved by a preponderance of the evidence. Specifically, the court stated that L.M. was neglected because she was left in respondent's care and respondent was an untreated sex offender, having been convicted of aggravated criminal sexual abuse the day before L.M. was taken into protective custody.
Respondent filed a motion for a new trial, arguing that the State failed to prove the allegation of neglect by a preponderance of the evidence and that the trial court erred when it denied respondent's motion for a directed finding. The trial court denied the motion, adjudicated L.M. neglected, and ordered respondent not to have contact with L.M. or M.M. until the court entered a contrary order. Respondent filed a motion to reconsider, raising the same issues he presented in his motion for a new trial. The trial court denied respondent's motion, and the court awarded M.M. the guardianship of L.M. This timely appeal followed.
Respondent argues that the trial court erred when it denied his motion for a directed finding and found that the State proved neglect by a preponderance of the evidence. Because these issues are intricately related, we will address the issues together. When a motion for a directed finding is made, the trial court must determine whether the plaintiff (State) has made out a prima facie case and then weigh the evidence, including the evidence that favors the defendant (respondent). Orbeta v. Gomez, 315 Ill.App.3d 687, 690, 248 Ill.Dec. 289, 733 N.E.2d 1287 (2000). If the trial court finds after weighing the evidence that the plaintiff's prima facie case has been negated, the court should grant the defendant's motion for a directed finding and enter a judgment for the defendant. Orbeta, 315 Ill.App.3d at 690, 248 Ill.Dec. 289, 733 N.E.2d 1287. On appeal, the reviewing court will not disturb the trial court's finding unless it is against the manifest weight of the evidence. Orbeta, 315 Ill.App.3d at 690, 248 Ill.Dec. 289, 733 N.E.2d 1287. A finding is against the manifest weight of the evidence if the facts clearly show that the trial court should have reached the opposite result. In re N.B., 191 Ill.2d 338, 346, 246 Ill.Dec. 621, 730 N.E.2d 1086 (2000).
In a proceeding to adjudicate a minor neglected, the State must establish neglect by a preponderance of the evidence, which is proof that any finding of neglect is more probably true than not true. In re N.B., 191 Ill.2d at 343, 246 Ill.Dec. 621, 730 N.E.2d 1086. An injurious environment is a basis for a finding of neglect (705 ILCS 405/2-3(1)(b) (West 1998)), and the term "injurious environment" is an amorphous concept that cannot be defined specifically. In re N.B., 191 Ill.2d at 346, 246 Ill.Dec. 621, 730 N.E.2d 1086. However, courts have interpreted "injurious environment" to include a *443 breach of the parents' duty to provide a safe and nurturing shelter for their children. In re N.B., 191 Ill.2d at 346, 246 Ill.Dec. 621, 730 N.E.2d 1086. Because rulings in cases involving neglect and injurious environment are fact-driven, a reviewing court will only reverse the trial court's judgment if the judgment is against the manifest weight of the evidence. In re N.B., 191 Ill.2d at 346, 246 Ill.Dec. 621, 730 N.E.2d 1086.
Here, the trial court found that L.M. was a neglected minor because she was left in respondent's care on July 15, 1999. When L.M. was left in respondent's care, respondent, having had a sexual relationship with L.M.'s minor mother, was considered a sex offender. At the hearing, no evidence was presented that respondent harmed L.M. in any way. Thus, the only basis upon which the trial court found neglect was the fact that respondent was a sex offender and was caring for L.M. We determine under the circumstances presented in this case that respondent's status as a sex offender alone, in the absence of other factors, does not establish an injurious environment. Therefore, we conclude that the trial court's ruling denying respondent's motion for a directed finding and its order adjudicating L.M. neglected should be reversed.
We note in reaching this conclusion that courts in other jurisdictions have found that a father's sex offender status without more cannot form the sole basis for restricting the father's parental rights. See State v. Coreau, 651 A.2d 319, 320 (Me. 1994) (father who committed heinous sex crime against nonrelated 14-year-old girl could not be prohibited contact with his minor children as a condition of his probation); In re Cruz, 164 Or.App. 178, 188, 990 P.2d 922, 927 (1999) (reviewing court determined that the father, who was a sex offender and had affairs with teenage girls, was not a threat to his minor daughters). Moreover, courts have recognized that the mere fact that an adult male fathers a child with a minor cannot be the only basis for denying the father contact with that child. See In re Brandie W., 157 Cal. App.3d 110, 114, 203 Cal.Rptr. 537, 540 (1984) (the best interests of the child are served when an adult father, who could have been prosecuted for statutory rape against the minor mother, is allowed visitation with the child that was born because of the affair); cf. E.R. v. D.T, 77 Misc.2d 242, 245-46, 353 N.Y.S.2d 612, 615 (1974) (reviewing court recognized a father's right to visit a child born out of wedlock but denied the 61-year-old father visitation given the father's age and the animosity between the 61-year-old father and the parents of the 13-year-old mother).
The State argues that the trial court's order should be affirmed because evidence that respondent sexually abused another minor, M.M., is sufficient to establish an injurious environment. The cases the State relies on in making its argument are clearly distinguishable from the facts presented in this case. Specifically, the cases the State cites involved the father abusing children who were under the father's care. See In re M.D.H., 297 Ill.App.3d 181, 189-90, 231 Ill.Dec. 863, 697 N.E.2d 417 (1998) (minor's environment could be injurious based solely on the fact that father molested the minor's brother for whom the father cared); In re M.K., 271 Ill.App.3d 820, 827, 208 Ill.Dec. 242, 649 N.E.2d 74 (1995) (when father abuses his own children the court need not wait until other children under the father's care are harmed before removing the other children from the father's home); In re A.D.W, 278 Ill.App.3d 476, 482, 215 Ill.Dec. 308, 663 N.E.2d 58 (1996) (father's daughter's environment was injurious based on fact that father had fondled the breasts of his stepdaughter). *444 Here, in contrast to the cases cited by the State, respondent did not sexually abuse a minor in his care. Rather, respondent was convicted of sexually abusing a minor to whom he was not related, with whom he did not live, and with whose care he was not entrusted. Given these distinguishing facts, we determine that the State's argument lacks merit.
For the reasons given, the judgment of the circuit court of Lake County is reversed.
Reversed.
GEIGER and BOWMAN, JJ., concur.